**Dated: September 15, 2022**

**The following is ORDERED:**



Sarah A Hall
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re: ) | |
| ) | |
| MORIAH R. LEWIS and ) | |
| BOBBY L. HARRISON, ) | Case No. 21-13041-SAH |
| ) | |
| Debtors. ) | |

**ORDER ON TRUSTEE'S MOTION FOR AUTHORITY**
**TO RELEASE TAX REFUNDS TO DEBTOR(S) WITH**
**<u>NOTICE OF OPPORTUNITY FOR HEARING [DOC. 29]</u>**

On June 13, 2022, Susan Manchester, Trustee ("Trustee"), filed the Trustee's Motion for Authority to Release Tax Refunds to Debtor(s) with Notice of Opportunity for Hearing [Doc. 29] (the "Motion"). Trustee states she has received the 2021 state and federal tax refunds of debtors Moriah R. Lewis ("Debtor Lewis") and Bobby L. Harrison (collectively, "Debtors") in the aggregate amount of $10,250. She calculates $4,714.08 belongs to the bankruptcy estate and

$4,906.59 belongs to Debtors.¹ See also Trustee's Facts and Brief on Motion to Release Tax Refund to the Debtor [Doc. 48], filed on August 25, 2022 (the "Trustee Brief").

Debtors do not agree and filed their Response to Motion for Authority to Release Tax Refunds Brief in Support [Doc. 30] on June 27, 2022 (the "Response"). Debtors cite to 11 U.S.C. § 541(b)(11), 26 U.S.C. § 6428B, and a memorandum to chapter 7 and 13 trustees from the United States Trustee, arguing the entire tax refund held by Trustee is outside their bankruptcy estate and should be returned in full to Debtors. See also Authority to Release Tax Refunds Brief in Support [Doc. 50], filed on August 26, 2022 (the "Debtor Brief").²

**STIPULATED FACTS**

The parties stipulated to the following statements of fact in their Stipulations [Doc. 44], filed on August 19, 2022 (the "Stipulations; singularly, "Stipulation"). The Stipulations are the starting point of the confusion created by the parties as to both the facts and the law. Particularly, the parties conflate the recovery rebate under 26 U.S.C. § 6428B and the expanded child tax credit under 26 U.S.C. §§ 7527A and 24. See Stipulation 8. Though both are provided by the American Rescue Plan (the "ARP"), they are governed by separate statutes and subject to different treatment under the Bankruptcy Code.

1.      Debtors filed this bankruptcy case on November 17, 2021.

---

¹Trustee calculates the estate portion using the full state and federal tax refund amount of $10,250, but then calculates Debtors' share by deducting the estate portion from only the federal refund, thus reducing Debtors' share by $629.33.

²The parties have turned a relatively simple issue into a frustrating and baffling one. Neither party provided the Court with adequate or accurate information with which to decide the Motion. Additionally, as will be discussed below, it is clear the parties have a fundamental misunderstanding regarding the tax credits and rebates at issue.

2

2. Trustee received Debtor Lewis' 2021 federal tax refund in the sum of $9,620.50, although her federal return provided she would receive a refund of $9,566. The difference resulted from $4.67 in interest the Internal Revenue Service ("IRS") added to the refund amount. Debtor Lewis' state refund was $684 (for total refunds of $10,304.50 (the "2021 Tax Refunds")).³

3. Debtor Lewis' 2021 federal tax return showed an earned income credit ("EIC") of $4,873 on line 27a and refundable child tax credit or additional tax credit of $4,800 on line 28 of the return. Debtor Lewis' Schedule E 8812, Part 1A provides Debtor Lewis has 3 children under the age of 18 and one of those children is under the age of 6. Part 1-B(f) of Schedule E 8812 provides Debtor Lewis' total child tax credit was $9,600 and Debtor Lewis received $4,800 of the child tax credits in 2021. Based on this information, Debtor Lewis' refundable child tax credit for 2021 to be included in her federal tax refund was $4,800.

4. Debtor Lewis admits in her affidavit [Doc. 42] she received $4,800 in advanced child tax credits in 2021.

5. Debtor Lewis received the $4,800 in 2021 pursuant to the ARP which directed the IRS to make advanced monthly payments of $250 per child ages 6 to 17 and $300 per month for children under 6 for the months of July through December 2021.

---

³Trustee contends the interest should be $54.67 rather than $4.67, and the refund amount from the IRS should be $9,620.67 rather than $9,620.50. See Trustee Brief, p. 1. Debtor seemingly agrees with the refund amount of $9,620.67, and the Court will use this figure. See Debtor Brief, p. 1, ¶ 1.

6. Debtor Lewis received 6 payments of $250 or $1,500 each for the two children who were 6 to 17 and $300 per month for the child under 6 or $1,800. Debtor Lewis received a total sum of $4,800 ($800 for 6 months) for advanced child tax credits in 2021 for all 3 children before the filing of her 2021 tax return.

7. The ARP expanded the previous child tax credits by $1,000 for children 6 to 17 (from $2,000 to $3,000) and children under 6 by $1,600 (from $2,000 to $3,600) and allowed advanced credits to be paid during 2021.

8. 11 U.S.C. § 541 provides the ARP expanded/increased the amount of the child tax credit for 2021 pursuant to Section 6428 of the Internal Revenue Code, with these expanded payments excluded from property of the bankruptcy estate.[4]

9. Trustee calculated Debtor Lewis' share of the 2021 Tax Refunds owed to the estate by using the tax return amount for the federal refund of $9,566 and the state refund amount of $684 for total refunds of $10,250 less the EIC of Debtor Lewis of $4,873, for a calculation of $5,377. Trustee then reduced this amount to $4,714 because Debtors filed this bankruptcy case 320 days into calendar year 2021.

10. The Assistant United States Trustee for the Western District of Oklahoma, Marjorie Creasey (the "AUST"), advised Trustee "ARP Tax Credits" are excluded as property of the estate, but the regular child tax credits are not excluded from Section 541 property of the estate and "the UST memo" (see Response, first attachment) does not extend the Section 541 exclusions to regular child tax credits.

---

[4] The Court disagrees with this Stipulation as the ARP excepted only "recovery rebates," not child tax credits, from property of the bankruptcy estate.

In the Debtor Brief, Debtors now claim they did not receive any funds under the ARP for the months of July through December, 2021. This statement is problematic for two reasons. First, this is an additional "fact" not contained in the Stipulations. As the parties agreed to submit the matter to the Court on stipulated facts, and as no evidence in the record supports this "fact," the Court declines to use it in reaching its conclusions. "In resolving a dispute, '[w]e cannot overlook or disregard stipulations which are absolute and unequivocal.'" Lincoln v. BNSF Ry. Co., 900 F.3d 1166, 1186 (10th Cir. 2018) (citing United States v. N. Colo. Water Conservancy Dist., 608 F.2d 422, 431 (10th Cir. 1979) (citations omitted)).[5] This unsupported statement in the Debtor Brief goes beyond the facts stipulated to by Trustee and Debtors and beyond the record provided to this Court. Moreover, as the parties submitted the Motion on stipulated facts, Trustee had no opportunity to cross-examine Debtor Lewis as to this "fact." Debtors' attempt to supplement the Stipulated Facts, without leave of Court and without consent of the other parties, is simply improper. Wild West World, 2008 WL 4498803, at *2 (citing Acordia of W. Va. v. Scharffenberger (In re Allegheny Health, Educ. and Research Foundation), 312 B.R. 58, 65-66 (Bankr. W.D. Pa. 2004)).

---

[5]Courts generally enforce stipulations in the absence of evidence a party did not make an informed and voluntary assent to the stipulations. Wild W. World, L.L.C. v. Mainland Valuation Servs. (In re Wild W. World, L.L.C.), No. 07-11620, 2008 WL 4498803, at *2 (Bankr. D. Kan. Oct. 1, 2008). Courts take this position because "stipulations of fact are admissions of the parties that are conclusive without further evidentiary support and are entered into in order to dispense with proof over matters not in issue." Wild West World, 2008 WL 4498803 at *2 n.6 (citing Kirtley v. Sovereign Life Ins. Co. of Cal. (In re Durability Inc.), 212 F.3d 551, 555–56 (10th Cir. 2000)). Debtors have sought neither to withdraw the Stipulations nor to amend the Stipulations, and Debtors have not argued they were somehow misled agreeing to the Stipulations. Additionally, this additional "fact" is based on information available and within Debtor Lewis' control at the time she entered into the Stipulations. Wild West World, 2008 WL 4498803, at *2.

> Counsel are reminded that when stipulations are employed as a substitute for actual trial, something this Court only permits when counsel consent to so proceeding, the parties are stuck with them as filed and they constitute the entire record for decision. Post-stipulation remorse notwithstanding, the Court cannot consider subsequent unilateral submissions by any party. Therefore, the Court strikes the Frazier affidavit and confines itself to the stipulated record presented by the parties in deciding this matter.

Wild West World, 2008 WL 4498803, at *2.

Second, this new "fact" directly contradicts Stipulation paragraph 5. For these reasons, the Court disregards this additional "fact."

## STATUTORY AUTHORITIES

26 U.S.C. § 6428B provides in relevant part:

> (a) In general.–In the case of an eligible individual, there shall be allowed as a credit against the tax imposed by subtitle A for the first taxable year beginning in 2021 an amount equal to the 2021 rebate amount determined for such taxable year.
>
> (b) 2021 rebate amount.–For purposes of this section, the term "2021 rebate amount" means, with respect to any taxpayer for any taxable year, the sum of–
>
>> (1) $1,400 ($2,800 in the case of a joint return), plus
>>
>> (2) $1,400 multiplied by the number of dependents of the taxpayer for such taxable year.
>
> . . .
> (f) Coordination with advance refunds of credit.–
>
>> (1) Reduction of refundable credit.–The amount of the credit which would (but for this paragraph) be allowable under subsection (a) shall be reduced (but not below zero) by the aggregate refunds and credits made or allowed to the taxpayer (or, except as otherwise provided by the Secretary, any dependent of the taxpayer) under subsection (g). Any failure to so reduce the credit shall be treated as arising out of a mathematical or clerical error and assessed according to section 6213(b)(1).
>> . . .
>
> (g) Advance refunds and credits.–
>
>> (1) In general.--Subject to paragraphs (5) and (6), each individual who was an eligible individual for such individual's first taxable year beginning in 2019 shall be treated as having made a payment against the tax imposed by chapter 1 for such taxable year in an amount equal to the advance refund amount for such taxable year.
>>
>> (2) Advance refund amount.–

6

>> (A) In general.--For purposes of paragraph (1), the advance refund amount is the amount that would have been allowed as a credit under this section for such taxable year if this section (other than subsection (f) and this subsection) had applied to such taxable year.
>
>> . . .
>
> (3) Timing and manner of payments.–The Secretary shall, subject to the provisions of this title and consistent with rules similar to the rules of subparagraphs (B) and (C) of section 6428A(f)(3), refund or credit any overpayment attributable to this subsection as rapidly as possible, consistent with a rapid effort to make payments attributable to such overpayments electronically if appropriate. No refund or credit shall be made or allowed under this subsection after December 31, 2021.

26 U.S.C. § 7527A provides in pertinent part:

> (a) In general.–The Secretary shall establish a program for making periodic payments to taxpayers which, in the aggregate during any calendar year, equal the annual advance amount determined with respect to such taxpayer for such calendar year. Except as provided in subsection (b)(3)(B), the periodic payments made to any taxpayer for any calendar year shall be in equal amounts.
>
> (b) Annual advance amount.–For purposes of this section–
>
>> (1) In general.–Except as otherwise provided in this subsection, the term "annual advance amount" means, with respect to any taxpayer for any calendar year, the amount (if any) which is estimated by the Secretary as being equal to 50 percent of the amount which would be treated as allowed under subpart C of part IV of subchapter A of chapter 1 by reason of section 24(i)(1) for the taxpayer's taxable year beginning in such calendar year if–
>
>>> (A) the status of the taxpayer as a taxpayer described in section 24(i)(1) is determined with respect to the reference taxable year,
>>>
>>> (B) the taxpayer's modified adjusted gross income for such taxable year is equal to the taxpayer's modified adjusted gross income for the reference taxable year,
>>>
>>> (C) the only children of such taxpayer for such taxable year are qualifying children properly claimed on the taxpayer's return of tax for the reference taxable year, and
>>>
>>> (D) the ages of such children (and the status of such children as qualifying children) are determined for such taxable year by taking into account the passage of time since the reference taxable year.
>
>> . . .
>
> (f) Application.–No payments shall be made under the program established under subsection (a) with respect to–
>
>> (1) any period before July 1, 2021, or
>>
>> (2) any period after December 31, 2021.

26 U.S.C. § 24 provides in pertinent part:

> (a) Allowance of credit.--There shall be allowed as a credit against the tax imposed by this chapter for the taxable year with respect to each qualifying child of the taxpayer for which the taxpayer is allowed a deduction under section 151 an amount equal to $1,000.
>
>> . . .

7

> (i) Special rules for 2021.–In the case of any taxable year beginning after December 31, 2020, and before January 1, 2022–
>
>> (1) Refundable credit.–If the taxpayer (in the case of a joint return, either spouse) has a principal place of abode in the United States (determined as provided in section 32) for more than one-half of the taxable year or is a bona fide resident of Puerto Rico (within the meaning of section 937(a)) for such taxable year–
>>
>>> (A) subsection (d) shall not apply, and
>>>
>>> (B) so much of the credit determined under subsection (a) (after application of subparagraph (A)) as does not exceed the amount of such credit which would be so determined without regard to subsection (h)(4) shall be allowed under subpart C (and not allowed under this subpart).
>>
>> (2) 17-year-olds eligible for treatment as qualifying children.–This section shall be applied–
>>
>>> (A) by substituting "age 18" for "age 17" in subsection (c)(1), and
>>>
>>> (B) by substituting "described in subsection (c) (determined after the application of subsection (i)(2)(A))" for "described in subsection (c)" in subsection (h)(4)(A).
>>
>> (3) Credit amount.–Subsection (h)(2) shall not apply and subsection (a) shall be applied by substituting "$3,000 ($3,600 in the case of a qualifying child who has not attained age 6 as of the close of the calendar year in which the taxable year of the taxpayer begins)" for "$1,000".

11 U.S.C. § 541(b)(11) (as in effect December 27, 2020 to December 26, 2021) provides:

> Property of the estate does not include – . . . (11) recovery rebates made under section 6428 of the Internal Revenue Code of 1986.

## CONCLUSIONS OF LAW

Having reviewed the Motion, the Response, and the two supporting briefs, as well as the applicable law, the Court is convinced this is a case of Trustee talking about oranges, while Debtor is talking about apples. And, while the Court is granting Trustee's requested relief, the Court believes a web of tax and exemption statutes not addressed by either party supplies the basket into which both the apples and the oranges fit.

## The ARP

1. In 2020 and 2021, in an effort to alleviate the economic hardships caused by the COVID pandemic, Congress enacted "three advance refunds of tax credits, colloquially referred to

as 'economic stimulus payments.'" Griffin v. United States, No. 212307T, 2022 WL 1101817, at *2 (Fed. Cl. Apr. 13, 2022).

### 2021 Recovery Rebate

2. The ARP was the third and final enactment and provided eligible individuals would receive an "advance refund" of the applicable tax credit up to $1,400 plus $1,400 for each qualifying dependent (the "2021 Recovery Rebate").[6] Griffin, 2022 WL 1101817, at *2 (citing 26 U.S.C. §§ 6428B(b) and (f)); Byers v. Rettig, No. 1:22-CV-00126-MR, 2022 WL 3205184, at *2 (W.D. N.C. Aug. 8, 2022); Austin v. Internal Revenue Serv., No. 21-CV-02637-HSG, 2022 WL 3579888, at *3 (N.D. Cal. Aug. 19, 2022).  See also Fed. Tax Coordinator ¶ A-4421 (2d.).

3. Importantly, in order to implement the "advance refund" of the applicable tax credit under the ARP, the IRS estimated the amount of the 2021 Recovery Rebate due to each taxpayer based on past tax return filings and *prepaid* that amount.  Griffin, 2022 WL 1101817, at *2 (citing 11 U.S.C.§ 6428B(g)(2)); Byers, 2022 WL 3205184, at *2 (citing 26 U.S.C. § 6428B(g)(3)) ("The ARPA similarly directed the Secretary to issue the refund or credit 'as rapidly as possible,' and specified that no impact payment 'shall be made or allowed . . . after December 31, 2021.'"); 1040 Deskbook Key Iss. 35I (34th ed. October 2021) (eligibility to receive the 2021 Recovery Rebate was based on criteria indicated on the taxpayer's 2020 filed return).

---

[6] It is worth noting this calculation of the 2021 Recovery Rebate differs from the calculation of the 2021 Child Tax Credit (defined below) under the ARP.

4. Accordingly, the advance payment of the 2021 Recovery Rebate was estimated based on past federal returns; when the 2021 federal tax return was filed, the IRS then determined the correct amount of the tax credit due to the taxpayer and paid any unpaid amount of the 2021 Recovery Rebate still owed to the taxpayer. Griffin, 2022 WL 1101817, at *2 (citing 11 U.S.C.§ 6428B(f)(1)). Taxpayers who did not receive the stimulus payments despite being eligible were able receive the unpaid tax credits due to them by filing a tax return. Griffin, 2022 WL 1101817, at *2. See also 26 U.S.C. § 6428B(a). See also Fed. Tax Coordinator ¶ A-4421 (2d.).

5. The IRS paid the 2021 Recovery Rebate in advance during 2021 using information from the taxpayer's 2019 tax return (unless the taxpayer had filed a 2020 tax return when IRS computed the taxpayer's credit, in which case IRS used information from the 2020 return to compute the credit). Fed. Tax Coordinator ¶ A-4420 (2d.) (citing 26 U.S.C. § 6428B(g)). The advance payment of the 2021 Recovery Rebate is clear given the express language of Section 6428B(g)(3): "No refund or credit shall be made or allowed under this subsection after December 31, 2021." 26 U.S.C. § 6428B(g)(3).

## 2021 Child Tax Credit

6. Under the ARP, Congress also expanded the federal child tax credit for 2021 for each minor child in 3 ways: "the credit was made fully refundable; the maximum age for qualifying children was increased from 17 to 18; and the maximum amount of the credit was increased to $3,600 for each qualifying child" (the "2021 Child Tax Credit"). Griffin, 2022 WL 1101817, at *3 (citing Pub. L. No. 117-2, § 9611, 135 Stat. at 144-45 (codified as amended at 26 U.S.C. § 24(i))).

7. The ARP further provided eligible individuals could receive one-half of the estimated amount of the 2021 Child Tax Credit in advance. Griffin, 2022 WL 1101817, at *3 (citing 26 U.S.C. § 9611(b)(1), 135 Stat. at 145-48 (codified as amended at 26 U.S.C. § 7527A)). The IRS calculated who was eligible for the 2021 Child Tax Credit and paid half of the credit in advance, but taxpayers were entitled to the balance due to them upon the filing of a federal tax return for the year 2021. Griffin, 2022 WL 1101817, at *3 (citing 26 U.S.C. § 24(j)).

8. The 50% advance payment of the Child Tax Credit was based on information from either the 2019 or 2020 filed federal tax return for a taxpayer. See 2021 Instructions for Schedule 8812 (2021).

**Application of Law to Facts**

Notwithstanding a quagmire of federal tax statutes, and the confusion created by the parties' minimal and misinformed briefing, the resolution of this case is clear.

9. The 2021 Recovery Rebate for Debtor Lewis is $1,400 (Debtor Lewis) plus $1,400 x 3 (number of dependents), totaling $5,600.

10. The 2021 Child Tax Credit for Debtor is $9,600. Stipulation ¶ 3.

11. Debtor Lewis received advanced payment of the 2021 Child Tax Credit of $4,800 in 2021. Stipulation ¶ 4.

12. Debtor Lewis claimed an additional $4,800 in "refundable or additional child care tax credits" on her 2021 Form 1040. Stipulation ¶ 3 and Exhibit 1.

13. First, while Debtor Lewis argues the $4,800 listed on line 28 of her 2021 Form 1040 is her 2021 Recovery Rebate, that simply cannot be the case. The 2021 Recovery Rebate,

11

by law, was required to be automatically paid in advance by the IRS during 2021 (based on Debtor Lewis' 2020 Form 1040) no later than December 31, 2021. 26 U.S.C. § 6428.B(g). There is no evidence before the Court (whether by stipulation or otherwise) establishing Debtor Lewis did not receive her 2021 Recovery Rebate.[7]

14. Second, the 2021 Recovery Rebate, if not previously received, would have been claimed on line 30, "Recovery Rebate Credit," of Debtor Lewis' 2021 Form 1040. <u>1040 Deskbook Key</u> Iss. 35I (34th ed. October 2021). However, Debtor Lewis claimed $0 on line 30 on her filed 2021 Form 1040.[8] Stipulation, Ex. 1, p. 2, line 30.

15. Third, Debtor Lewis claimed $4,800 in "refundable or additional child care tax credit" on her Form 1040. Debtor Lewis stipulated she received $4,800 of the 2021 Child Tax Credit in 2021, leaving $4,800 of her $9,600 2021 Child Tax Credit to be claimed on her 2021 Form 1040.

16. The facts and law, together, make clear the $4,800 claimed as "refundable or additional child care tax credit" is, in fact, the second half of Debtor Lewis' 2021 Child Care Tax Credit and not recovery of her 2021 Recovery Rebate which had to be paid (and in Debtor Lewis' position, would have been automatically paid) on or before December 31, 2021.

---

[7] It would be inexplicable for the advance payment of the 2021 Child Tax Credit to have been made to Debtor Lewis based on her 2020 or 2019 filed federal return but for the 2021 Recovery Rebate not to have been made to Debtor Lewis based on the exact same return.

[8] Given Debtor Lewis' use of a paid tax preparer and her avid attempt to obtain the full tax refund as excluded from property of the estate, it seems unlikely Debtor Lewis would fail to correctly claim the unpaid Recovery Rebate on the filed 2021 Form 1040 prepared just a few months prior to the Motion's filing.

**The 2021 Child Tax Credit is Property of the Estate.**

17. The bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." Cohen v. Borgman (In re Borgman), 698 F.3d 1255, 1257 (10th Cir. 2012).

18. Section 541(b)(11) removed the 2021 Recovery Rebate from Debtor Lewis' bankruptcy estate. In re Moreno, 629 B.R. 923, 927 (Bankr. W.D. Wash. 2021). Section 541(b)(11), by its terms, excludes only "recovery rebates" made under Section 6428 of the Internal Revenue Code from bankruptcy estates *and not* the 2021 Child Tax Credit pursuant to Sections 24 and 7527A of the Internal Revenue Code. However, the 2021 Recovery Rebate is not included in the calculation of Debtor Lewis' 2021 Tax Refunds as demonstrated above. Since the 2021 Tax Refunds do not include any portion of Debtor Lewis' 2021 Recovery Rebate, Section 541(b)(11) does not apply to exclude any portion of the 2021 Tax Refunds from Debtors' bankruptcy estate.

19. On the other hand, Debtor Lewis' 2021 Child Tax Credit *is* included in the calculation of her 2021 Tax Refunds. Since the 2021 Child Tax Credit is made pursuant to Sections 24 and 7527A and not Section 6428 of the Internal Revenue Code, the portion of the 2021 Tax Refunds attributable to Debtor Lewis' 2021 Child Tax Credit is not excluded from Debtor Lewis' bankruptcy estate under Section 541(b)(11).

20. Debtor Lewis may exempt certain property interests, effectively removing them from the bankruptcy estate. In re Landgrebe, 2009 WL 3253933, at *1 (10th Cir. BAP Sept. 23, 2009) (citing 11 U.S.C. § 522(b)(1)). Exemptions can only be claimed on property interests that are property of the bankruptcy estate. Landgrebe, 2009 WL 3253933, at *1

      (first citing Owen v. Owen, 500 U.S. 305, 308 (1991); and then citing Carbaugh v. Carbaugh (In re Carbaugh), 278 B.R. 512, 520-21 (10th Cir. BAP 2002)). Under 11 U.S.C. § 522(b), Oklahoma has opted out of the federal exemptions, limiting Debtors' exemptions to those available under Oklahoma law. In re Reshetov, 2011 WL 4102770, at *1 (Bankr. N.D. Okla. 2011).[9]

21. As the parties agreed, Okla. Stat. tit. 31, § 1(A)(23) exempts "[a]ny amount received pursuant to the federal earned income credit." As a result, $4,873 of the Tax Refunds attributable to Debtor Lewis' EIC are exempt and, therefore, not part of the bankruptcy estate and must be returned to Debtors.

22. The remainder of the 2021 Tax Refunds is attributable to the 2021 Child Tax Credit.[10] However, Oklahoma does not exempt child tax credits.

23. The child tax credit and the earned income credit are not one and the same for the exemption purposes. "While exemption statutes are to be construed liberally, courts are not free to depart from the express statutory language or to extend the legislative grant." Reshetov, 2011 WL 4102770, at *3. The child tax credit is exempt in only a handful of jurisdictions, either by specifically adding the child tax credit to the list of state exemptions or by having a broad exemption for public assistance benefits. Reshetov, 2011 WL 4102770, at *4 (citing Kirtley v. George, 97-CV-40-K(J), 1997 WL 33311019

---

[9] Debtors did not claim an exemption in the 2021 Tax Refunds or the 2021 Child Tax Credit. See Doc. 1, pp. 16-17. Out of an abundance of caution, the Court addresses Debtors' ability to exempt the 2021 Child Tax Credit.

[10] A small portion of the 2021 Tax Refunds is attributable to overpayment due to regularly withheld income tax which is property of the estate. Borgman, 698 F.3d at 1257.

(N.D. Okla. Aug. 7, 1997)). In Oklahoma, the legislature has neither specifically designated child tax credits as exempt nor created a broad based exemption for public assistance benefits. While the Court sympathizes with Debtors' need for the 2021 Child Tax Credit portion of the 2021 Tax Refunds and with the AUST's request to use caution in administering the 2021 Child Tax Credit (See Stipulation Exhibit 4), this Court has no authority or jurisdiction to interpret the plain and unambiguous language in Section 1 to satisfy policy issues or to otherwise address welfare concerns. Such concerns must be addressed by the Oklahoma legislature. Reshetov, 2011 WL 4102770, at *4. Consequently, the 2021 Child Tax Credit portion of the 2021 Tax Refunds is not exempt under Oklahoma law.

24. The remaining $5,431.67 of the Tax Refunds (the "Non-Exempt Refunds") must be apportioned, with the portion allocable to the pre-Petition Date period of 2021 being property of Debtors' bankruptcy estate, and the remainder belonging to Debtors.

25. The Petition Date, November 17, 2021, was the 320th day of 2021, so 320/365 of the Non-Exempt Refund, totaling $4,762.01 is property of the bankruptcy estate, with the balance owed to Debtors.

26. The Court agrees with Trustee's manner of allocating the 2021 Tax Refunds between the bankruptcy estate and Debtors (although our numbers differ as the Court is using the amounts set forth in the Stipulations) as follows:

| | |
|---|---|
| 2021 Tax Refunds ($9,620.67 (federal) and $684.00 (state)) | $10,304.67 |
| Less Earned Income Credit to be returned to Debtors | $ 4,873.00 |

| | |
|---|---|
| Net 2021 Tax Refunds | $ 5,431.67 |
| X days from January 1, 2021 to Petition Date | 320/365 |
| Bankruptcy Estate's Portion of the 2021 Tax Refunds | $ 4,762.01 |
| Debtor's Portion of the 2021 Tax Refunds | $ 669.66 |
| Plus 2021 EIC | $ 4,873.00 |
| Amount Trustee Returns to Debtor from 2021 Tax Refunds | $ 5,542.66 |

Accordingly, Trustee is entitled to administer $4,762.01 for the benefit of Debtors' bankruptcy estate and is directed to return $5,542.66 to Debtors as their share of the 2021 Tax Refunds.

## **CONCLUSION**

For the reasons set forth above, the Motion is granted, and Trustee is directed to (i) retain and administer $4,762.01 for the benefit of Debtors' bankruptcy estate and (i) return $5,542.66 to Debtors as their share of the 2021 Tax Refunds.

IT IS SO ORDERED.

# # #